NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

LEON SHNAYDER, et al.,

        Plaintiffs,

  v.

LORI MCGRAIL,

        Defendant.

CIVIL NO. 03-1959 (TJB)

**OPINION**

**BONGIOVANNI, United States Magistrate Judge**

    This matter comes before the Court upon a Motion by Defendant Lori McGrail (hereinafter "Defendant") for Summary Judgment and a Cross Motion for Partial Summary Judgment by Plaintiffs Leon Shnayder and Inga Berkareva (hereinafter "Plaintiff" for purposes of Defendant's Summary Judgment Motion and "Plaintiffs" for purposes of Plaintiffs' Cross Motion for Partial Summary Judgment).[1]  The Motion and Cross Motion have been decided upon the written submissions of the parties.  For the reasons given below, Defendant's Motion for Summary Judgment and Plaintiffs' Cross Motion for Partial Summary Judgment will be denied.

**I.    BACKGROUND OF THE CASE**

    Plaintiffs Leon Shnayder, Inga Berkareva and Elina Lampert[2] brought this civil action in response to a motor vehicle accident which occurred on July 19, 2001 on Route 287 near

---

[1] Defendant's Motion for Summary Judgment seeks decision only regarding Plaintiff Leon Shnayder.

[2] Plaintiff Lampert had previously settled with Defendant and is no longer a party in this action.

1

Piscataway, New Jersey, whereby Plaintiff's vehicle was rear-ended by a vehicle being driven by Defendant.[3]  (Def.'s Stat. of Mat. Facts ¶ 1.)  Plaintiff was subsequently transported via ambulatory services to Robert Wood Johnson University Hospital in New Brunswick, New Jersey.  (*Id.* at ¶ 2.)  Plaintiff presented with a concussion and a laceration across the bridge of his nose.  (Plt.'s Reply to Def.'s Mat. Facts ¶ 3.)  CT scans and X-rays that were taken of Plaintiff by the hospital staff presented with results which were not immediately attributable to the accident.  Thereafter, Plaintiff embarked upon an almost four-month medical evaluation, which ended (absent IME's) with surgical arthroscopy of Plaintiff's right shoulder on November 16, 2001.  (Def.'s Stat. of Mat. Facts ¶ 17.)

After the instant suit was initiated, Plaintiff underwent his first IME on December 8, 2003 by Dr. Carl F. Mercurio.  After conducting and reviewing numerous tests and their results regarding Plaintiff's shoulders, spine and hips, Dr. Mercurio concluded that there was a "causal relationship between the above diagnoses and the injury of July 19, 2001 . . . even with future treatment, there will always remain a permanent residue from this accident."  (Report of Carl F. Mercurio, M.D., December 2003.)

Defendant's attorney countered by requesting his own IME of Plaintiff.  Subsequently, on April 15, 2004, Plaintiff reported to Dr. Aaron A. Sporn for an independent orthopaedic exam.  Dr. Sporn's examination results were antithetical to Dr. Mercurio's results.  Specifically, Dr. Sporn found that medically speaking, a rear-end collision was extremely unlikely to cause the type of shoulder injury Plaintiff suffered.  (Report of Aaron A. Sporn, M.D., April, 2004.)  Dr.

---

[3] At the time of the accident, Plaintiff held an automobile insurance policy from Ohio Casualty with a limitation on lawsuit option.  (*Id*. at ¶ 31.)

Sporn stated that as such, "the July 19, 2001 accident is not the substantial factor that indicated right shoulder surgery. The primary indication for that operation needs to be explained by something aside from an injury sustained on July 19, 2001." (*Id*.) Dr. Sporn also noted that Plaintiff had no right shoulder complaints immediately following the accident. (*Id*.) Dr. Sporn found that the injuries that Plaintiff sustained in the accident were limited to soft tissue sprains, strains and contusions of the cervical, thoracic and lumbar spines, left knee, possibly right knee and one of Plaintiffs' elbows, none of which were permanent. (*Id*.)

## II.    STANDARD OF REVIEW

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Orson, Inc. v. Miramax Film Corp.,* 79 F.3d 1358, 1366 (3d Cir. 1996).

In deciding whether there is a disputed issue of material fact, the Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pennsylvania Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

Once the moving party has properly supported its showing of no triable issue of fact and an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita*, 475 U.S. at 586;

*see also Anderson*, 477 U.S. at 247-48.  The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324; *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) ("to raise a genuine issue of material fact . . . the [non-moving party] need not match, item for item, each piece of evidence proffered by the movant," but rather "must exceed the 'mere scintilla' threshold"), *cert. denied*, 507 U.S. 912 (1993).

### III.    DISCUSSION

#### A.    Defendant's Motion for Summary Judgment

Defendant's Motion for Summary Judgment is based upon a limitation on lawsuit threshold pursuant to the Automobile Insurance Cost Recovery Act of New Jersey.  Defendant argues that at the time of the accident, Plaintiff held an automobile insurance policy from Ohio Casualty with a limitation on lawsuit option.  The limitation on lawsuit option, also known as the verbal threshold, is codified in the New Jersey Statutes, 39:6A-1, *et seq*.

Defendant contends N.J.S.A. 39:6A-8(a) provides that the owner and/or operator of an automobile is exempt from tort liability for non-economic loss to a person unless that person has sustained a bodily injury which meets one of six criteria of the statute.  Defendant argues that Plaintiff fails to satisfy the verbal threshold because he has not sustained an injury that falls within any of the six categories, including category six which requires "a permanent injury within a reasonable degree of medical probability."  (*Id*.)  Defendant therefore asserts that she is entitled to Summary Judgment because a reasonable jury could not conclude that Plaintiff sustained a qualifying, permanent injury.  (Def.'s Motion for Summary Judgment.)

Plaintiff objects to Defendant's Motion and argues that Plaintiff has suffered a "permanent injury" as that meaning is defined in category six of N.J.S.A. 39:6A-8(a). Plaintiff refers to several previous summary judgment motions involving the issue of verbal threshold where the courts have found that a physician certification attesting to the permanency of an injury was enough to rebuff a motion for summary judgment. Plaintiff notes that Dr. Mercurio as well as several treating physicians have observed injuries of permanence regarding Plaintiff. Plaintiff asserts that the facts in dispute between the parties present a genuine issue and are material to the litigation and can only be resolved by a finder of fact necessitating the denial of Defendant's Motion for Summary Judgment.[4] (Plt.'s Opposition to Def.'s Motion for Summary Judgment.)

### 1. Verbal Threshold

In the 1960's and early 1970's, New Jersey joined a national effort aimed at tort reform and adopted the No Fault Act, which provided for personal injury protection coverage and a tort threshold permitting lawsuits to be maintained when the insured sustained injuries that resulted in medical expenses in excess of $200. The reforms did little to quell the number of lawsuits filed or the costs of insurance, however, and in an effort to reduce those numbers, the New Jersey legislature passed the New Jersey Auto Insurance Freedom of Choice and Cost Containment Act. This was shortly followed by the Verbal Threshold Act, which allowed insureds who selected the no threshold option to recover damages for non-economic losses arising from injuries sustained in a motor vehicle accident. A claimant who selected the lawsuit or verbal threshold benefitted from lower insurance premiums but forfeited the right to maintain suits for non-economic damages, unless the injuries fell into one of nine categories.

---

[4] Plaintiff does not contest that he is subject to the verbal threshold.

In spite of New Jersey's efforts, the exodus of insurance companies from New Jersey due to the unprofitability of the market continued and increased. Costs for automobile insurance were prohibitive, and judicial backlogs based upon suits regarding injuries sustained in automobile accidents were at what was deemed an unacceptable level. The New Jersey legislature revisited the issue yet again and initiated another revision of the insurance laws.

The result was the Automobile Cost Reduction Act (widely known as "AICRA"). Among the accomplishments of AICRA was a new standard for applying the verbal threshold, with the intent to strengthen its power. Under the new verbal threshold as defined in AICRA, a party electing the verbal threshold cannot maintain suit for non-economic loss unless they have sustained a bodily injury that results in: 1) death; 2) dismemberment; 3) significant disfigurement or significant scarring; 4) displace fractures; 5) loss of fetus; or 6) a permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement, which the legislature defined as a body part or organ, or both, which has not healed to function normally and will not heal to function normally with further medical treatment. (*See* 224-OCT N.J. Law. 48) (N.J.S.A. 39:6A-8(a)).

        2.      **Application of the Verbal Threshold to a Motion for Summary Judgment**

In order for a Plaintiff who sustained injuries in an automobile accident to survive a motion for summary judgment under AICRA, a court must first determine if Plaintiff can show by objective credible evidence that the injury falls within one of the six enumerated classes of injuries (*see infra*). If an injury survives that inquiry, a court must then determine whether the injury has had a serious impact on Plaintiff's life. If it has, Plaintiff will survive a motion for summary judgment. (*Branca v. Matthews*, 317 F.Supp.2d 533 (D.N.J. 2004)).

6

      **3.**      **Analysis**

The first and most important question before the Court regarding this Motion is whether Plaintiff suffered permanent injury. To make that determination, the Court has reviewed all medical information provided by both parties. Whether the information provided was objective or even credible, as *Branca* demands, will have to remain an open question.

There does exist a plethora of conflicting medical evaluations and diagnoses which rise to a level preventing this Court from determining, one way or the other, whether Plaintiff has indeed suffered a permanent injury as defined in the New Jersey Statutes. Plaintiff could show that one or more of the injuries he sustained as a result of the July 19, 2001 accident fall within the sixth enumerated class of injury under N.J.S.A. 39:6A-8(a) based upon at least a portion of the medical evaluations Plaintiff received. Likewise, based upon a portion of medical evaluations in existence, including the IME conducted at Defendant's behest, Defendant could show that Plaintiff's injuries do not qualify as permanent as previously defined, thereby precluding Plaintiff from proceeding with the instant civil action.

Because the medical reports and evaluations are conflicting, there is a genuine issue of material fact that Defendant is unable to dispel. Questions of fact are for a jury and cannot be determined by this Court. As such, Plaintiff survives the first inquiry of *Branca*.

The next question under *Branca* is whether the injuries in question have had a serious impact on Plaintiff's life. Unfortunately, the parties do not address this prong of the *Branca* test. However, a logical argument would naturally exist for almost every Plaintiff that has suffered a permanent injury and that argument would be that due to the injury's permanence, substantial alteration of life and/or lifestyle has occurred. Certainly, permanent injury regarding someone's back and/or shoulder could potentially impact the simplest of everyday tasks. Whether the

injuries have impacted Plaintiff's life, and if so, how much becomes a question of damages, and yet again, such a question remains solely within a jury's purview.

Because questions of material fact do exist, this Court shall deny Defendant's Motion for Summary Judgment.

### B. Plaintiffs' Cross Motion for Partial Summary Judgment

Plaintiffs' Cross Motion for Partial Summary Judgment is based upon the holding of *Dolson v. Anastasia*, 55 N.J. 2, 10-11 (1969) which finds that in an automobile accident in which one car is rear-ended by another, the fault is automatically assumed against the driver of the car in the rear under the theory that said driver was following too closely. Plaintiffs seek to have this Court grant the cross motion for a finding of liability against Defendant.

Defendant objects to Plaintiffs' Cross Motion and argues that the factual circumstances of the accident and why Plaintiff was rear-ended remain in question. Specifically, Defendant points to evidence that provides for a scenario in which Plaintiff maneuvered his vehicle in a negligent manner after missing the freeway exit he sought, thus "cutting off" Defendant. Defendant cites to disparities between Plaintiff's recollection of events and the investigation officer's description of the accident. (Def.'s Opp.) Defendant states that the conflicting accounts of how the rear-end collision occurred is a question of material fact that must be presented to the jury.

Plaintiffs' reply to Defendant's objection does not bate the factual circumstances. Plaintiffs instead rely on the law and argue that the holding of *Dolson* is absolute, with no consideration for factual circumstances. Plaintiffs further argue that Defendant fails to provide any law that provides for exception to the *Dolson* rule.

The issue here becomes whether a rear-end collision invokes a type of strict liability, or whether circumstances surrounding the collision could negate said liability. If a rear-end

8

collision by its very nature causes irrefutable liability, then Plaintiffs' Cross Motion for Partial Summary Judgment should be granted. If there are conditions or circumstances which would allow a jury to find comparative negligence or non-negligence on behalf of the driver who rear-ended another, then Plaintiff's Motion should be denied, because Defendant has provided enough evidence to suggest a question of material fact which a jury would have to consider.

The applicable New Jersey statute is N.J.S.A. 39:4-89, which states, in relevant part that "the driver of a vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard to the speed of the preceding vehicle and the traffic upon, and condition of, the highway." The statute itself does not expressly indicate a strict liability standard. [5]

*Dolson v. Anastasia*, 55 N.J. 2, 10-11 (1969) held that a car following in the same lane of traffic is "obligated to maintain a reasonably safe distance behind the car ahead, having due regard to the speed of the preceding vehicle and the traffic upon and condition of the highway . . . .[F]ailure to do so resulting in a collision, is negligence . . ." In *Eaton v. Eaton*, 226 N.J.Super. 62, 66 (App.Div.1988), the court held that "[a] violation of the careless driving statute was not merely evidence of negligence, it was negligence." (*See also Rush v. Guggenheim*, 1993 WL 235624 (D.N.J. 1993) (holding that the defendant had been issued a summons and was found guilty of careless driving and therefore, was negligent as a matter of law . . .plaintiffs' motion for summary judgment against defendants as to liability was granted). These cases show a trend towards stepping beyond a negligence *per se* standard, where violation of a statute provided a plaintiff with satisfaction of the duty and breach prongs of negligence, while putting said plaintiff

---

[5] Ordinarily, absent express language reflecting legislative intent, courts will not apply a strict liability standard.

to task regarding causation and damages, and entering into a strict liability standard.

However, there are other cases which do not immediately assume liability, but rather, provide for circumstances where liability could be shared or negated in its entirety. In *La Mandri v. Carr*, 148 N.J.Super. 566, 372 A.2d 1327 (A.D.1977), for example, the court held that the New Jersey statute in question was not intended to apply indiscriminately to any case in which the front of one vehicle comes into contact with the rear of another. In *Jones v. Bennett*, 306 N.J.Super. 476, 703 A.2d 1008 (App.Div. 1998), the court found that the defendants had failed to provide evidence to support a theory of comparative negligence by plaintiffs when the vehicle plaintiffs were riding in stalled in the center lane of the New Jersey Parkway.

Because there is law that suggests that a person causing a rear-end collision could potentially have no liability or only partial liability, this Court cannot rule out the possibility that the variables Defendant illustrates could relieve Defendant of some if not all liability. Additionally, there are material facts in question regarding how the collision occurred and whether Plaintiffs were contributorily negligent. Therefore, Plaintiffs' Motion for Partial Summary Judgment shall be denied.

### IV.     CONCLUSION

The Court finds that there are material questions of fact regarding injuries of permanency as well as liability, and as such, Defendant's Motion for Summary Judgment and Plaintiffs' Cross Motion for Partial Summary Judgment are DENIED.

s/Tonianne J. Bongiovanni  
**HONORABLE TONIANNE J. BONGIOVANNI**  
**UNITED STATES MAGISTRATE JUDGE**